# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

CAROLYN COOMBS                                                                    PLAINTIFF

v.                          NO. 3:15-cv-00242 PSH

CAROLYN W. COLVIN, Acting Commissioner                                            DEFENDANT
of the Social Security Administration

## MEMORANDUM OPINION AND ORDER

Plaintiff Carolyn Coombs ("Coombs") began the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Coombs maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] Specifically, Coombs maintains that her residual functional capacity was not properly assessed. It is Coombs' position that the ALJ improperly drew his own inferences from the medical evidence and erroneously evaluated Coombs' subjective complaints.

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010). As a part of assessing the claimant's residual functional capacity, the ALJ is required to evaluate the claimant's credibility regarding her subjective complaints. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). The ALJ makes that evaluation by considering the medical evidence and evidence of the claimant's "daily activities; duration, frequency, and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions." See Id. at 1218 [citing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)].

The medical evidence relevant to Coombs' residual functional capacity reflects that she is five feet, three inches tall and weighs 240 pounds. See Transcript at 30-31. The ALJ could and did therefore find that Coombs has a Body Mass Index of 42.5. See Transcript at 18. The question for the ALJ was not whether Coombs is obese but rather the extent to which her weight impacts her ability to perform work-related activities. The medical evidence on that question is not abundant. Save repeated notations in the record that Coombs is "well built and nourished," see Transcript at 301, 299, 297, 295, 293, 291, 289, 287, 285, 283, 281, there is little mention of her weight and the work-related limitations it causes.

Coombs was seen at St. Bernards Regional Medical Center ("St. Bernards") on multiple occasions between July of 2011 and December of 2012 for her complaints of pain, swelling, and tenderness in and around her joints.[2] The progress notes reflect that although swelling and tenderness were repeatedly noted, she was typically in no acute distress and usually exhibited a normal range of motion in her extremities. See Transcript at 379, 368, 362, 355, 343, 335, 321, 315, 309. She was diagnosed with rheumatoid arthritis and prescribed medication. It appears that she was also once given an injection and, on another occasion, encouraged to wear a splint on her wrist.

Coombs was also seen at an AR Care clinic on multiple occasions between August of 2011 and April of 2014 for her complaints of pain, swelling, and tenderness in and around her joints.[3] The progress notes reflect that although Coombs was observed to have swelling and tenderness in and around her joints, back and musculoskeletal examinations were typically routine and showed no abnormalities. See Transcript at 301, 299, 297, 295, 293, 291, 289, 287, 285, 283, 281, 407, 405, 403, 463, 460. Rheumatoid arthritis was diagnosed, and medication was prescribed.

---

[2] See Transcript at 376-381 (07/30/2011), 370-375 (10/01/2011), 364-369 (10/23/2011), 358-363 (11/29/2011), 351-357 (12/08/2011), 345-350 (01/03/2012), 339-344 (01/05/2012), 331-338 (01/19/2012), 317-322 (07/02/2012), 311-316 (07/17/2012), 306-310 (12/23/2012).

[3] See Transcript at 301-302 (08/12/2011), 299-300 (11/04/2011), 297-298 (11/22/2011), 295-296 (01/25/2012), 293-294 (03/26/2012), 291-292 (05/21/2012), 289-290 (07/23/2012), 287-288 (08/27/2012), 285-286 (09/26/2012), 388 (01/29/2013), 385-387 (02/08/2013), 407-408 (03/27/2013), 405-406 (05/21/2013), 405 (06/25/2013), 403-404 (07/10/2013), 393 (09/17/2013); 403 (09/17/2013); 402-403 (11/21/2013); 402 (12/04/2013); 464 (01/17/2014); 462-464 (01/21/2014); 460-461 (03/01/2016 and 03/06/2014); 459-460 (03/19/2014); 459 (04/04/2014), 457-459 (04/14/2014).

Coombs was also seen at the NEA Baptist Clinic on at least three occasions between May of 2014 and July of 2014 for her symptoms associated with rheumatoid arthritis.[4] When she presented in May of 2014, evidence of severe degenerative changes was noted in her hands and knees. See Transcript at 491. She was given an injection in both knees and started on medication. By the time she was last seen in July of 2014, she reported being "much better," see Transcript at 470, although she still complained of pain in her right knee.

Dr. Robert Reed, M.D., ("Reed") and Dr. Sharon Keith, M.D., ("Keith") reviewed Coombs' medical records. See Transcript at 90-92, 103-105. Reed and Keith disagreed about the weight Coombs could occasionally lift and carry but otherwise agreed that, inter alia, she could sit, stand, and walk for about six hours in an eight hour workday. Keith opined that Coombs was capable of light work.

The non-medical evidence relevant to Coombs' residual functional capacity reflects that she completed a pain questionnaire and a function report in connection with her applications for disability insurance benefits and supplemental security income payments. See Transcript at 218-219, 223-230. In the forms, she represented that her pain is from her neck to her feet and lasts all day, every day. She represented that she has difficulty holding objects and cannot stand, walk, sit or bend at the knees. She represented that a typical day consists of nothing more than sitting around her home.

---

[4] See Transcript at 489-493 (05/16/2014), 474-477, 480 (07/17/2014), 470-472, 467-468 (07/25/2014).

Coombs testified during the administrative hearing. See Transcript at 29-45. She testified that she last worked in May of 2012 as a housekeeper but lost the job when she was fired for using her cell phone at work. She testified that she would have likely left the job in any event because its demands were becoming greater than she could perform. She so testified because of the swelling in her hands and her difficulty walking and standing. The medication she was taking helped her symptoms but did not relieve them entirely. When asked to describe a typical day, Coombs testified as follows: "Sitting on the couch. Maybe walking around in the house trying to keep my legs from stiffening up so bad. Basically that's it." See Transcript at 38. She sometimes visits her daughter's home and can shop if there is a motorized cart to ride in. Coombs can do some household chores but watching television is "basically the only thing [she] can do ..." See Transcript at 39. She can walk for no more than five minutes at a time and can stand for no more than two to three minutes at a time.

The ALJ found that Coombs has severe impairments in the form of rheumatoid arthritis, fibromyalgia, and obesity.[5] The ALJ found that Coombs' residual functional capacity is such that she can perform light work, although Coombs can only frequently use her hands to finger and grasp and is only occasionally able to climb ladders, ropes, scaffolds, ramps or stairs, or balance, stoop, kneel, crouch, and crawl. The ALJ made the

---

[5] The ALJ's finding that Coombs' severe impairments include fibromyalgia is not supported by substantial evidence on the record as a whole. Coombs testified that she has no knowledge of such a diagnosis. See Transcript at 36. The ALJ's erroneous finding does not warrant a remand, though, because the finding is harmless error.

finding on the basis of the medical evidence, which he characterized as supporting the proposition that Coombs has limitations caused by pain, swelling, and tenderness in and around her joints but otherwise revealing no acute distress and a normal range of motion in her extremities. The ALJ also made the finding on the basis of the non-medical evidence, which he found did not fully support Coombs' subjective complaints.

Substantial evidence on the record as a whole supports the ALJ's assessment of Coombs' residual functional capacity. Coombs has limitations caused by obesity and rheumatoid arthritis. The question for the ALJ was the extent to which the limitations impact Coombs' residual functional capacity. The evidence is conflicting on that question and is capable of more than one acceptable characterization, but the ALJ could find as he did. The Court so finds for three reasons.

First, the evidence relevant to the limitations caused by Coombs' obesity is minimal. The ALJ nevertheless found that "[i]n light of [Coombs'] other physical impairments, [her] obesity is expected to produce additional limitations on [her] ability to perform work-related activities." See Transcript at 18. The ALJ then considered the combined impact of Coombs' weight and impairments in assessing her residual functional capacity. The assessment the ALJ made is consistent with the evidence as there is no indication the combined impact of Coombs' weight and impairments is greater than that found by the ALJ. Although Coombs' weight causes some limitation, it appears that her work-related limitations are caused primarily by the pain, swelling, and tenderness in and around her joints caused by her rheumatoid arthritis.

Second, the medical evidence relevant to the effects of Coombs' rheumatoid arthritis is conflicting and capable of more than one acceptable characterization. Although Coombs continues to experience pain, swelling, and tenderness in and around some of her joints, the progress notes from her examinations support the ALJ's finding that the examinations showed she was "generally in no acute distress and … had no limb abnormalities …" See Transcript at 18. In addition, Keith's opinions support the ALJ's characterization of the medical evidence.[6] With specific regard to Coombs' difficulties holding objects, the ALJ properly incorporated a handling and grasping limitation into the assessment of Coombs' residual functional capacity. The Court is not persuaded that the ALJ improperly drew his own inferences from the medical evidence.[7]

Coombs faults the ALJ for mis-interpreting the repeated use in the medical record of the phrase "no acute distress." The Commissioner concedes that the phrase would not be of "particular significance with a chronic condition such as … rheumatoid arthritis." See Document 16 at CM/ECF 5. Assuming the ALJ mis-interpreted the phrase, it is harmless error. As the Commissioner notes, consistent reports of Coombs having normal movement of all extremities would be, and are, significant in determining the most Coombs can do despite her limitations.

---

[6] Because Keith's opinions are consistent with the other medical evidence, the ALJ could and did rely upon the opinions. See Mabry v. Colvin, 2016 WL 827183 (8th Cir. March 3, 2016)

[7] Coombs testified she suffers from restless leg syndrome. See Transcript at 37-38. The ALJ could and did find, though, that the impairment is "helped with medication and [the] treatment notes failed to show that her ability to perform work activity was more than minimally affected." See Transcript at 16.

Third, the non-medical evidence relevant to the effects of Coombs' rheumatoid arthritis is also conflicting and capable of more than one acceptable characterization. Coombs represented that her daily activities are severely limited, and the Court accepts that her activities are as she represented. The ALJ could discount, though, Coombs' representations regarding her activities because there is little evidence, medical or otherwise, to support such an extreme limitation of her activities. The ALJ noted Coombs' use of medication, and the ALJ could and did find that it helps control Coombs' pain. With respect to her representations that she can walk for no more than five minutes at a time and can stand for no more than two to three minutes at a time, there is little evidence to corroborate such an extreme limitation of her ability to walk and stand. The ALJ also considered Coombs' work history and could and did note that she was "let go from her last position due to personal reasons …" See Transcript at 19.

"The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." See Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). In this instance, Coombs has not offered a valid reason for deviating from that rule. The characterization of her subjective complaints made by the ALJ was adequate and is one of the acceptable characterizations permitted by the evidence. The Court is not persuaded that Coombs' subjective complaints were erroneously evaluated.

Given the foregoing, there is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Coombs' complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 25th day of May, 2016.

_____
UNITED STATES MAGISTRATE JUDGE